UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BENNETT, D.D.S., <br> Plaintiff, <br> v. <br> OHIO NATONAL LIFE ASSURANCE CORPORATION, et al., <br> Defendants. | Case No. 19-cv-05774-DMR <br><br> **ORDER ON MOTION TO REMAND AND MOTION TO DISMISS** <br> Re: Dkt. Nos. 9, 14 |

Plaintiff Mark Bennett, D.D.S., filed this disability insurance action in Marin County Superior Court against Defendants Ohio National Life Assurance Corporation ("Ohio National") and Mitchell & Mitchell Insurance Agency, Inc. ("Mitchell"). Ohio National removed the action on the basis of diversity jurisdiction, asserting that there is complete diversity between the parties because Mitchell was fraudulently joined in the case. [Docket No. 1 (Notice of Removal) 6-10.] Bennett now moves to remand the action. [Docket No. 9.] Mitchell moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint against Mitchell. [Docket No. 14.] This matter is suitable for determination without oral argument. Civil L.R. 7-1(b). For the following reasons, the motion to remand is granted and the motion to dismiss is denied as moot.

## I. BACKGROUND AND PROCEDURAL HISTORY

On August 13, 2019, Bennett filed suit in the Superior Court of California, County of Marin, against Ohio National, an insurance company authorized to do business in California, and Mitchell, a licensed insurance broker/agent with its principal place of business in California. Compl. ¶¶ 1, 2. Bennett makes the following allegations in the complaint: while practicing as an oral surgeon, Bennett purchased three disability insurance policies issued by Ohio National from Mitchell. *Id*. at ¶¶ 5-6. Bennett alleges that Mitchell represented that the Ohio National policies

1  "would provide him disability coverage if he was no longer able to work as an oral surgeon due to injury or sickness, and that under the Policies Ohio National would be required to pay him a lifetime monthly disability benefit if he became disabled due to sickness or injury while the Policies were in force." *Id*. at ¶ 7. Specifically, "Mitchell represented . . . that the maximum benefit period under the Policies was 'lifetime' such that Plaintiff would be entitled to receive monthly disability benefits for the duration of his life so long as he became unable to work as an oral surgeon due to sickness or injury." *Id*.

While the policies were in effect, Bennett "was thrown from a horse, suffered serious and debilitating injuries to his shoulder and upper extremity necessitating surgery . . . and became totally disabled from the practice of oral surgery." He "remains totally disabled as a result of the injuries [he] suffered from the fall from the horse." *Id*. at ¶ 10. Bennett submitted a claim for benefits under the policies, and Ohio National accepted and approved payment of monthly total disability benefits. *Id*. at ¶¶ 11, 12. However, Ohio National claimed that Bennett's total disability was due to a sickness (degenerative disc disease) rather than due to the injuries he suffered due to the fall and determined that his disability benefits would end at age 65 because his disability commenced after his 55th birthday. *Id*. at ¶ 12. After Bennett reached age 65, Ohio National terminated his benefits and "has failed and refused to pay Plaintiff the ongoing monthly benefits to which he was entitled." *Id*. Bennett alleges that Ohio National wrongfully withheld benefits "based upon its wrongful determination" that Bennett's disability is due to sickness. In the event that his disability is properly characterized as due to sickness rather than injury, he alleges that "the cessation of his monthly disability benefits at Age 65 is in direct contravention" of Mitchell's representations "that the Maximum Benefit Period under the Policies was 'Lifetime' without regard to the cause of" any disability. *Id*. at ¶ 13.

Bennett alleges claims for breach of contract and breach of the covenant of good faith and fair dealing against Ohio National. He alleges claims for breach of fiduciary duty, negligent misrepresentation, and negligence against Mitchell.

On September 13, 2019, Ohio National removed the case to federal court, asserting that removal is proper based on diversity jurisdiction. Ohio National states that it is an Ohio citizen

2

1   and states upon information and belief that Bennett is a citizen of California. It contends that

2   Mitchell's citizenship (California) should be disregarded because it is a sham defendant. Notice of

3   Removal 6. According to Ohio National, Bennett's claims against Mitchell are untimely and

4   barred by the statute of limitation. *Id*. at 6-9.

5   Bennett now moves to remand the case to state court, disputing Ohio National's claim that

6   Mitchell is a sham defendant whose California citizenship may be disregarded. He asserts that his

7   claims against Mitchell are timely. Mitchell cross-moves pursuant to Rule 12(b)(6) to dismiss

8   Bennett's claims against Mitchell on the grounds that they are untimely.

## II.   MOTION TO REMAND

### A.   Legal Standard

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any matter that originally could have been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal courts are courts of limited jurisdiction and possess subject matter jurisdiction in civil cases based only on federal question or diversity jurisdiction. *Id.*; *see* 28 U.S.C. §§ 1331, 1332. To invoke diversity jurisdiction in an action involving United States citizens, the complaint must allege that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . . " 28 U.S.C. § 1332(a)(1).

"Although an action may be removed to federal court only where there is complete diversity of citizenship, 'one exception to the requirement for complete diversity is where a non-diverse defendant has been fraudulently joined.'" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (internal citations omitted) (quoting *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001)). Under Ninth Circuit law, the joinder of a non-diverse defendant is deemed fraudulent when a plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state." *Hunter*, 582 F.3d at 1043. In such cases, the court may ignore the presence of the non-diverse defendant for purposes of determining diversity. *Id*. (citing *Morris*, 236 F.3d at 1067). There is a strong presumption against removal jurisdiction and a general presumption against fraudulent joinder, which means that the removing defendants bear a "heavy burden" to prove fraudulent joinder, with all ambiguity resolved in favor of remand

3

to state court. *Hunter*, 582 F.3d at 1046.

The Ninth Circuit recently underscored that a fraudulent joinder analysis is different from a Rule 12(b)(6) analysis, and requires remand if there is a "possibility" that a state court could find that the plaintiff has stated a cause of action against the allegedly fraudulent defendant:

> A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined. We emphasized in *Hunter* that a federal court must find that a defendant was properly joined and remand the case to state court if there is a "*possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants." *Hunter*, 582 F.3d at 1046 (emphasis added) (internal quotations and citation omitted) (quoting *Tillman*, 340 F.3d at 1279). This standard accords with that adopted by a majority of our sister circuits.
> 
> . . .
> 
> A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits. Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984) ("A paid complaint that is 'obviously frivolous' does not confer federal subject matter jurisdiction."). The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we "strictly construe the removal statute," and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

*Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549-50 (9th Cir. 2018).

Removing defendants must prove fraudulent joinder by "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and courts may consider "summary judgment-type evidence" when resolving claims of fraudulent joinder. *See Morris*, 236 F.3d at 1068.

**B. Analysis**

Ohio National does not address the Ninth Circuit's standard for fraudulent joinder in its Notice of Removal or opposition to the motion to remand but instead argues that the complaint fails to state a claim against Mitchell because Bennett's claims against Mitchell are barred by the statute of limitations. According to Ohio National, Bennett's breach of fiduciary duty, negligent

4

misrepresentation, and negligence claims are each subject to the two-year statute of limitations set forth in California Code of Civil Procedure section 339.[1] It notes Bennett's allegation that Ohio National "determined Plaintiff's disability benefits would end at Age 65" because his disability was due to sickness and not injury. Compl. ¶ 12. Ohio National states that it informed Bennett of this determination and notified him that it would cease paying him disability benefits when he reached age 65 in a letter dated June 8, 2015. [Docket No. 1-2 (Heibert Decl., Sept. 13, 2019) ¶ 5, Ex. E (June 8, 2015 Letter).] According to Ohio National, Bennett learned of Mitchell's alleged misrepresentations regarding the policies on that date, June 8, 2015. Therefore, it argues, his claims against Mitchell accrued on that date. However, he did not file suit until August 2019, over four years later. Accordingly, Ohio National contends that Bennett's claims against Mitchell are untimely, and Mitchell is a sham defendant whose citizenship should be disregarded.

Bennett does not challenge Ohio National's contention that his claims are subject to a two-year statute of limitations but disputes its assertion that his claims against Mitchell accrued on June 8, 2015, the date he learned of Mitchell's alleged misrepresentations. Bennett asserts that damages is a required element of each of his claims against Mitchell, and that under applicable California authority, his claims did not accrue until he sustained damages. He states that he first suffered damages on September 3, 2018, which is the date he reached age 65 and Ohio National ceased paying his monthly benefits. *See* Heibert Decl. ¶ 4 (noting Ohio National "ceased paying benefits to Plaintiff" as of September 3, 2018). Therefore, he argues, his claims against Mitchell

---

[1] Section 339 provides in relevant part

> Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, except as provided in Section 2725 of the Commercial Code or subdivision 2 of Section 337 of this code; or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder.

Cal. Civ. Proc. Code § 339(1).

are timely.

Thus, the current dispute boils down to whether Bennett's claims against Mitchell accrued on June 8, 2015, in which case they are untimely, or on September 3, 2018, in which case they are timely. In support of its position, Ohio National primarily relies on an unpublished Ninth Circuit decision, *Flynn v. Paul Revere Insurance Group*, 2 Fed. Appx. 885 (9th Cir. 2001), and district court cases following *Flynn*. In *Flynn*, the Ninth Circuit affirmed summary judgment on the plaintiff's breach of contract and breach of the duty of good faith and fair dealing claims against his insurer on the ground that they were time-barred. The court rejected the plaintiff's argument that his claims accrued when the insurer stopped making monthly disability payments and held that the claims instead accrued four years earlier, when his "right to accidental benefits was denied." *Id*. at 886 ("the statute of limitations began running when [the plaintiff] knew or had reason to know that his claim for disability payments under the accident provision had been denied."). *See also Finkelstein v. AXA Equitable Life Ins. Co.*, 325 F. Supp. 3d 1061, 1067 (N.D. Cal. 2018) (holding statute of limitations on claims against insurer "began to accrue when [insurer] denied Plaintiff's request for reclassification and not when the insurance company ceased making payments to Plaintiff," citing *Flynn*); *Hong v. AXA Equitable Life Ins. Co*., No. 18-cv-04039-JST, 2018 WL 6331012, at *4 (N.D. Cal. Dec. 4, 2018) (same, relying on *Finkelstein*).

However, these decisions appear contrary to California cases regarding accrual of similar claims. Bennett urges the court to follow *Lederer v. Gursey Schneider LLP*, 22 Cal. App. 5th 508, 530-31 (2018), which involves facts similar to this case. In *Lederer*, plaintiff Joyce Lederer employed the defendant, an accounting firm, to manage her finances. Lederer asked the defendant to purchase uninsured/underinsured insurance with policy limits of $5 million, but the defendant purchased a policy with a limit of only $1.5 million. *Id*. at 512. In February 2010, Lederer's son Jonathan was seriously injured in a motorcycle incident, and she learned shortly thereafter that the limit on her policy was only $1.5 million. Two years later, the insurer for the other driver involved in the accident tendered its $15,000 policy to Jonathan, and in June 2012, Lederer's own insurer tendered its $1.5 million limit to Jonathan. *Id*. In March 2013, Lederer and Jonathan sued the defendant "alleging that they had been damaged because they could not collect the additional

money they would have been entitled to had [the defendant] purchased an insurance policy with the limits [Lederer] had requested," among other reasons. *Id*. at 512-13. The trial court granted the defendant summary judgment on the plaintiffs' claims, finding that they were untimely because they accrued "shortly after the accident when plaintiffs discovered that the insurance coverage [the defendant] purchased was less than what" Lederer had requested. *Id*. at 513.

The Court of Appeal reversed the trial court's order holding the claims time-barred. The court noted that "[g]enerally speaking, a cause of action accrues 'at the time when the cause of action is complete with all of its elements.'" *Id*. at 521 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005)). This means that the statute of limitations "begins to run when (1) the aggrieved party discovers the negligent conduct causing the loss or damage *and* (2) the aggrieved party has suffered actual injury as a result of the negligent conduct." *Id*. (quotation omitted; emphasis added). The court explained that "actual harm is required before a cause of action accrues," as follows:

> If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.

*Id*. (quoting *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971)). While it was undisputed that the plaintiffs discovered the defendant's failure to secure the insurance coverage Lederer had requested shortly after the 2010 accident, the court held that the relevant question was when the plaintiffs incurred "actual injury," and not when they had discovered the defendant's alleged negligence. *Id*. The court found that even though Jonathan suffered damages as a result of the accident in 2010, the plaintiffs "did not suffer the damages alleged to be caused by [the defendant]—diminished benefits under the underinsured motorist coverage—until Jonathan received that diminished benefit payment in June 2012." *Id*. at 522. Moreover, the court noted that Jonathan was not even entitled to coverage from the underinsured motorist policy until after he settled with the other driver's insurance, which was in January 2012. *Id*. ("Under relevant statutes and case law, a right to underinsured motorist coverage does not accrue until the insured has reached a settlement or judgment exhausting the underinsured motorist policy."). The court concluded that the plaintiffs'

7

claims against the defendant were not time-barred, because "a cause of action accrues when it is complete with all of its elements":

> Damages is an element of the torts alleged in this case. Jonathan did not incur actual damages arising from [the defendant's] negligence until June 2012, when he recovered $1.5 million from the underinsured motorist policy instead of the higher amount he allegedly would have received in the absence of [the defendant's] negligence. Jonathan's cause of action against [the defendant] therefore did not accrue until June 2012. The trial court erred by granting summary adjudication on the basis that plaintiffs' causes of action were time barred.

*Id*. at 530-31. *See also Thomsen v. Canyon*, 198 Cal. App. 4th 594, 604 (2011) (holding that where "damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained . . . when the wrongful act does not result in immediate damage, the cause of action does not accrue prior to the maturation of perceptible harm." (quotation omitted)).

Here, Bennett asserts that *Lederer* "is on all fours with the present matter," and that as with the claims at issue in that case, damages is an element of each of the claims he alleges against Mitchell. He states that he did not suffer actual damages until he failed to receive the benefits that he contends he should have received absent Mitchell's misconduct, which was after September 2018. Therefore, under *Lederer*, none of his claims for relief accrued until that date, rendering his 2019 claims timely.

Although *Lederer* involves facts that are somewhat different from those in *Flynn*, there is a clear tension between the two decisions. Applying *Flynn*, a court could find that Bennett's claims accrued in June 2015, when Ohio National notified him of its coverage determination and intention to cease monthly disability benefits. However, the analysis in *Flynn* is not detailed and does not address the rule relied upon by *Lederer* court that "actual harm is required before a cause of action accrues." *Lederer*, 22 Cal. App. 5th at 521 (citing *Budd*, 6 Cal. 3d at 200).

The court need not resolve the tension between *Flynn* and *Lederer*. Given these apparently contradictory opinions, Ohio National has failed to meet its burden to show that there is "no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *See Green v. Amerada Hess Corp*., 707 F.2d 201, 205 (5th Cir. 1983); *Hunter*, 582 F.3d at 1046. Should a state court follow *Lederer* and disregard *Flynn*, it could conclude that

8

1  Bennett's claims accrued in September 2018, because that is the date that Ohio National ceased

2  paying his monthly benefits causing him damages as a result of Mitchell's misconduct. As a

3  result, this court lacks subject matter jurisdiction and the matter must be remanded. *See* 28 U.S.C.

4  § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject

5  matter jurisdiction, the case shall be remanded.").

### III. MOTION TO DISMISS

Given the court's conclusion that it lacks jurisdiction over this matter, Mitchell's motion to dismiss is denied as moot.

### IV. CONCLUSION

For the foregoing reasons, Bennett's motion to remand is granted. This matter is remanded to Marin County Superior Court. The clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: November 15, 2019



_____
Donna M. Ryu
United States Magistrate Judge